**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CUSTOM GLASS SOLUTIONS, LLC** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **ANTHONY RICCI and ISOCLIMA** | : | |
| **SPECIALTY GLASS, LLC** | : | **NO. 25-6598** |

**MEMORANDUM OPINION**

**Savage, J.**                                                             **June 18, 2026**

Anthony Ricci quit his job at Custom Glass Solutions, LLC ("Custom Glass") to work with Custom Glass's competitor, Isoclima Specialty Glass, LLC ("Isoclima"). Before leaving, he downloaded a folder of documents from his work-issued computer onto his personal external hard drive. Custom Glass claims those documents contain confidential and proprietary information that Ricci and Isoclima are now using to harm its business.

Custom Glass has moved for a preliminary injunction to prevent Ricci and Isoclima from using the information to wrongfully interfere with its business. Because Custom Glass has not established that it will suffer imminent or irreparable harm absent an injunction, we will deny the motion.

**Background[1]**

Custom Glass manufactures glass products and services used in numerous industries, including law enforcement.[2] Isoclima is an international manufacturer of glass

---

[1] The facts recited are supported by exhibits attached to the parties' briefing as well as exhibits and testimony presented at the preliminary injunction hearing held on April 27, 2026.

[2] *See* Pl. Custom Glass Solutions, LLC's Mot. for Prelim. Inj. and Mot. for Expedited Discovery ["Pl.'s Mot. for Prelim. Inj."] 2, ECF No. 9.

laminates for armored vehicles and high-security buildings.[3]  Custom Glass and Isoclima are direct competitors in the ballistic glass industry.[4]

Anthony Ricci began work as an Aftermarket Sales Manager at Custom Glass in October 2023.[5]  In that role, he developed and marketed bulletproof enclosures for municipal bus drivers.[6]  In May 2025, Ricci's supervisor, Jeremy Scott, left Custom Glass to work for Isoclima.[7]  The following month, Ricci resigned from Custom Glass and joined Scott at Isoclima, selling ballistic glass used in law enforcement vehicles.[8]

Before leaving Custom Glass, Ricci downloaded a folder from his work computer to his personal external hard drive.[9]  The folder contained copies of documents related to work Ricci had performed for Custom Glass.[10]  Ricci contends that because he had a strained relationship with Custom Glass when he left, he downloaded the folder to retain proof of his work.[11]

Custom Glass claims the downloaded documents contain confidential proprietary and trade secret information, and that Ricci and Isoclima have since used the information to unfairly compete for business.[12]  It argues the defendants' alleged misconduct has

---

[3] Def. Isoclima Specialty Glass LLC's Br. in Opp'n to Pl.'s Mot. for Prelim. Inj. ["Isoclima's Opp'n"] 2, ECF No. 18; Decl. of Lance Cotton in Supp. of Def. Isoclima's Opp'n to Mot. for Prelim. Inj. ["Cotton Decl."] ¶¶ 2–3, ECF No. 19–1.

[4] *See* Pl.'s Mot. for Prelim. Inj. 2.

[5] Certification of Anthony Ricci ["Ricci Cert."] (attached as Ex. A to Def. Anthony Ricci's Mem. of L. in Opp'n to Pl.'s Mot. for Prelim. Inj. ["Ricci's Opp'n"], ECF No. 17) ¶¶ 4, 15, ECF No. 17-1.

[6] *Id.* ¶¶ 14, 25.

[7] *Id.* ¶¶ 18, 35, 37.

[8] *Id.* ¶¶ 37–38, 60.

[9] *Id.* ¶ 50.

[10] *Id.* ¶ 52.

[11] *Id.* ¶¶ 34, 51; Apr. 27, 2026 Prelim. Inj. Hr'g Tr.

[12] *See* Pl.'s Mot. for Prelim. Inj. 1–2.

"already caused, and will continue to cause, irreparable harm . . . through the loss of its business relationships, goodwill, contracts, and disclosure of [its] trade secrets."[13]

Custom Glass asserts the defendants have used the information to unlawfully interfere with business with the Texas Department of Public Safety ("Texas DPS") related to the "upfitting" of Texas DPS's fleet of law enforcement vehicles.[14]  Texas DPS has historically contracted with upfitters Dana Safety Supply, Inc. ("Dana") and Defender Supply, LLC ("Defender") for the upfitting of its fleet.[15]  The fleet includes Chevrolet Tahoes and Ford Police Interceptor Utility ("Ford PIU") vehicles.[16]  Dana, which sources its ballistic glass from Custom Glass, performs all upfitting work for the Tahoes.[17]  The Ford PIU upfitting was previously split between Dana and Defender, with Dana upfitting the windows with ballistic glass and Defender performing other upfitting services.[18]  Shortly after Ricci started at Isoclima, Texas DPS gave Dana's portion of the Ford PIU work to Defender, which sources its ballistic glass from Isoclima.[19]

Custom Glass argues Texas DPS's switch from Dana to Defender was caused by the defendants' misappropriation of Custom Glass's confidential information.[20]  Specifically, it contends pricing information in the downloaded documents allowed

---

[13] *See id.* at 2.

[14] *See id.* at 5–6.  "Upfitting" entails modifying civilian vehicles with police equipment such as lights, radios, and ballistic glass for use by law enforcement agencies.  *See* Isoclima's Opp'n 5 n.3.

[15] *See* Apr. 27, 2026 Prelim. Inj. Hr'g Tr.

[16] *See id.*

[17] *Id.*

[18] *Id.*

[19] *See id.*; Isoclima's Opp'n 5–6; Cotton Decl. ¶ 6.  Neither Custom Glass nor Isoclima contracts with Texas DPS for the fleet upfitting project.  Custom Glass contracts with Dana, and Isoclima contracts with Defender.  *See* Ricci Cert. ¶¶ 30, 62–65; Cotton Decl. ¶ 6.

[20] *See* Pl.'s Mot. for Prelim. Inj. 5–6.

Isoclima to set competitive prices aimed at winning Dana's portion of the Ford PIU work for Defender.[21]

Custom Glass contends the defendants "are interfering with other contracts"[22] in addition to the Texas DPS work, but does not identify any additional business relationships that have been affected. It requests an injunction barring the defendants' use of its confidential information "to solicit business and interfere with [its] existing and prospective business relationships and contracts[.]"[23]

The parties conducted expedited discovery on the issue of injunctive relief. We then held a hearing.

### Analysis

A preliminary injunction is an extraordinary remedy. *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999). In determining whether to grant preliminary injunctive relief, we consider four factors: (1) the likelihood that Custom Glass will succeed on the merits; (2) the threat of irreparable harm to Custom Glass if an injunction is not granted; (3) whether granting an injunction will result in greater harm to Custom Glass than to the defendants; and (4) whether injunctive relief will be in the public interest. *Smith v. City of Atl. City*, 138 F.4th 759, 779 (3d Cir. 2025). Only if the moving party demonstrates that it will likely succeed on the merits and will suffer harm if preliminary relief is not granted, do we consider and balance the remaining factors to

---

[21] *See id.* at 6, 12.

[22] *See id.* at 11.

[23] *Id.* at 18.

determine if equitable relief is warranted.  *See Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 203 (3d Cir. 2024).

We may grant preliminary injunctive relief only upon a clear showing that irreparable harm is likely.  *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 142 (3d Cir. 2017); *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 204 (3d Cir. 2014).  There must be more than a mere risk of irreparable harm.  Custom Glass must show that harm, which cannot be remedied after trial, is likely.  *Del. State Sportsmen's Ass'n, Inc.*, 108 F.4th at 204.

It must also show that the harm is imminent.  *Synthes, Inc. v. Gregoris*, 228 F. Supp. 3d 421, 440 (E.D. Pa. 2017); *Cont'l Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980).  Remote or speculative injury does not warrant an injunction.  *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 263–64 (3d Cir. 2000).

Custom Glass argues it "will suffer irreparable harm if injunctive relief is not granted through the loss of its customer goodwill and business relationships, and the disclosure of its trade secrets."[24]  The only specific harm it identifies is the partial loss of Dana's Texas DPS upfitting work.  That harm is not imminent.  It has occurred.  Texas DPS has engaged Defender to install Isoclima glass in its Ford PIUs.  Dana is still engaged by Texas DPS to upfit the agency's Chevy Tahoes with Custom Glass glass.  Custom Glass has not shown that the remaining work is threatened.

Even if the alleged harm were imminent, it would not warrant a preliminary injunction because it is not irreparable.  Beyond generic claims of harm to its business relationships, the only damages Custom Glass has claimed are monetary.  Monetary

---

[24] *Id.* at 14.

damages are not irreparable. *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d 553, 557 (3d Cir. 2009) ("We have long held that an injury measured in solely monetary terms cannot constitute irreparable harm.").

Nor is the harm attributable to the defendants' alleged misconduct. Custom Glass has not linked the information Ricci took to Texas DPS's switch from Dana to Defender for the Ford PIU upfitting. Custom Glass focuses almost exclusively on two purchase orders from January 2023 and January 2024 showing prices Custom Glass charged Dana for glass used in the Texas DPS upfitting work.[25] At the hearing, Seth Wyatt, Custom Glass's Vice President of Sales and Marketing for Original Equipment,[26] admitted that the pricing information in the purchase orders would have been outdated by the time Texas DPS engaged Defender for the Ford PIU windows.[27] But, he testified that the information would allow someone in the industry to roughly calculate current prices of the same products.[28] Even assuming that is correct, Custom Glass has not linked the information to the loss of the Texas DPS work.

First, Custom Glass has not shown the information was used. Ricci testified that he never accessed the information after downloading it to the hard drive.[29] Before this case was filed, he returned to Custom Glass all allegedly confidential information.[30] Isoclima contends it has never been in possession of any of the information.[31] Although

---

[25] *See* Defs.' Prelim. Inj. Hr'g Ex. 5 at CGS0000054–55.

[26] *See* Ricci Cert. ¶ 33.

[27] *See* Apr. 27, 2026 Prelim. Inj. Hr'g Tr.

[28] *See id.*

[29] *See id.*

[30] Ricci Cert. ¶¶ 53, 57.

[31] *See* Isoclima's Opp'n 17–18; Apr. 27, 2026 Prelim. Inj. Hr'g Tr.

Custom Glass claims Ricci may have saved copies of the information before returning the hard drive,[32] it has not established that he did.

Even if Ricci retained the information and shared it with Isoclima, Custom Glass has not shown that the information influenced Isoclima's prices. Isoclima's president, Lance Cotton, testified that Isoclima develops its prices by taking its cost from its supplier, Optima Balistic, and selling at a minimum profit margin.[33] That margin, which Cotton testified is 30%, must be approved by Isoclima's board of directors.[34] In other words, Isoclima has a set price below which it cannot sell, and that price is based off what it is charged by its own supplier. Ricci testified that he helped develop the cost Isoclima charged Defender.[35] But, he was not involved in setting the price Defender charged Texas DPS.[36] Defender develops its pricing independently.[37]

Furthermore, the purchase orders document what Dana had to pay Custom Glass, not what Texas DPS had to pay Dana. Custom Glass argues the information was used by Isoclima to competitively price its ballistic glass. Defender, not Texas DPS, buys the Isoclima glass. And Custom Glass has not shown how Isoclima's pricing may have impacted what Defender, in turn, charged Texas DPS, or how those prices compared to Dana's.

---

[32] In support of their position that Ricci saved copies of the documents in another location, Custom Glass points to evidence that Dropbox, a cloud-based storage system, was downloaded to his computer shortly before he returned the drive to Custom Glass. *See* Pl.'s Mot. for Prelim. Inj. 4–5; Apr. 27, 2026 Prelim. Inj. Hr'g Tr. But it has not shown what, if anything, was saved there.

[33] *See* Apr. 27, 2026 Prelim. Inj. Hr'g Tr.

[34] *See id.*

[35] *See id.*

[36] *Id.*

[37] *Id.*

Custom Glass has not shown that pricing caused Texas DPS's decision to switch to Defender.  The record shows the decision was caused by quality issues with Custom Glass's product.  In July 2025, Defender informed Isoclima that Texas DPS "has used another glass company [Custom Glass] over the last few years," but, due to issues with the glass, was "looking at other solutions."[38]  By September 2025, roughly 500 of 2,000 vehicles Dana had upfitted with Custom Glass windows needed replacing due to quality concerns.[39]  Defender offered an alternative.  Texas DPS took it.

Since the alleged harm related to the Texas DPS contract is not imminent, irreparable, or attributable to the defendants, it cannot support a preliminary injunction.  The only other harm Custom Glass alleges is vague and speculative.  It claims it "reasonably believes Defendants are interfering with other contracts" and has suffered "loss of customer goodwill." [40]  But, despite having engaged in discovery, Custom Glass cannot point to any agreement or business relationship that will be imminently affected by the defendant's alleged use of its confidential information.

## Conclusion

Custom Glass has failed to show imminent and irreparable harm.  Therefore, we will deny its motion for preliminary injunction.

---

[38] *See* Isoclima/Defender Emails Dated July 21, 2025 (attached as Ex. A to Isoclima's Opp'n) 2, ECF No. 18-1 ("DPS has used another glass company over the last few years and is now having to replace glass without warranty so they are looking at other solutions.").

[39] *See* Apr. 27, 2026 Prelim. Inj. Hr'g Tr.; Defs.' Prelim. Inj. Hr'g Ex. 21 at CGS0000467.

[40] Pl.'s Mot. for Prelim. Inj. 11, 14.